# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                         NEWS RELEASE #014

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **26th day of March, 2019**, are as follows:

**PER CURIAM**:

2018-B-1799      IN RE: DORIS MCWHITE WESTON

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Doris McWhite Weston, Louisiana Bar Roll number 26419, be and she hereby is suspended from the practice of law for a period of one year and one day. This suspension shall be deferred in its entirety, subject to a two-year period of supervised probation governed by the conditions set forth in this opinion. The probationary period shall commence from the date respondent, the probation monitor, and the ODC sign a formal probation plan. Any failure of respondent to comply with these conditions, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

SUPREME COURT OF LOUISIANA

NO. 2018-B-1799

IN RE: DORIS McWHITE WESTON

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Doris McWhite Weston, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**

By way of background, in 2010, respondent commenced employment with the Louisiana Department of Children and Family Services ("DCFS"), where she remains employed as an Attorney IV. She also maintains a small private practice.

In September 2013, respondent began representing her father in a personal injury matter. On September 19, 2013, respondent wrote to third-party medical provider Broadmoor Chiropractic Clinic ("the clinic") to assure the clinic that she would pay her father's medical bill from any settlement or proceeds received on her father's behalf. That same day, the clinic sent a medical lien letter to respondent. The clinic treated respondent's father from September 16, 2013 until January 2, 2014.

On January 30, 2014, respondent settled her father's claim for $12,500. That same day, she negotiated a reduction of the clinic's $4,901 bill to $4,000 if paid within thirty days. On February 10, 2014, respondent deposited the settlement check into her trust account. On February 11, 2014, respondent transferred $4,000 from

the trust account to her operating account. On February 12, 2014, respondent had a cashier's check in the amount of $8,475.01 issued on her trust account and made payable to her parents. Respondent did not charge her father any attorney's fees and waived $56.50 in medical records costs. Respondent prepared a settlement statement, which reflected that the clinic was owed $4,000 and that this amount was $901 less than the clinic's original charge.

The clinic did not receive the $4,000 within the thirty-day period and notified respondent that it was now seeking full payment. On several occasions in March and April 2014, the clinic attempted to contact respondent about the outstanding balance. On April 30, 2014, respondent called the clinic and stated that the case had been closed and a check sent three weeks previously. The clinic informed respondent that it had not received a check. On May 27, 2014, respondent told the clinic she would determine if the check had been cashed and, if not, would reissue the check. The clinic made several subsequent attempts to collect the balance.

On August 6, 2014, respondent sent the clinic a cashier's check in the amount of $4,000. On August 12, 2014, the clinic notified respondent that there was still a balance due of $901 and that, if the balance was not paid, it would "follow through with contacting the Louisiana Attorney Disciplinary Board." Respondent informed the clinic that she would pay the $901 on August 29, 2014. However, the clinic still had not received the payment on September 11, 2014. That day and the next, the clinic contacted respondent about the balance. On September 17, 2014, respondent gave the clinic her debit card information in order to make the payment, but the charge was declined by the credit card company because it exceeded respondent's daily limit for debit card transactions. On September 30, 2014, the clinic filed a disciplinary complaint against respondent; the ODC received this complaint in its office on October 3, 2014. Also on October 3, 2014, the clinic successfully charged

2

$700 to respondent's debit card. On November 11, 2014, the clinic successfully charged the remaining $201 to respondent's debit card.

## DISCIPLINARY PROCEEDINGS

In October 2017, the ODC filed formal charges against respondent, alleging that her conduct violated Rule 1.15 (safekeeping property of clients or third persons) of the Rules of Professional Conduct. Respondent answered the formal charges, essentially acknowledging the underlying facts set forth above. She further explained:

> In an effort to resolve the matter, I arranged for the payment of $901. This amount was paid from my personal funds, as I withheld only the $4000.00 agreed upon as Broadmoor Clinic payment from Mr. McWhite's settlement proceeds. After making the arrangement, a representative from Broadmoor Chiropractic Clinic later advised that the attempt to charge the debit card failed. This was due to my daily limit being less than the $901 dollar charge. I instructed Broadmoor Chiropractic Clinic to split the payment into two payments of $700 and $201, to be ran on different dates. The first payment posted without incident. The remaining balance of $201 somehow remained outstanding, until I received a complaint about an unpaid balance. I contacted Broadmoor Clinic, was advised that the employee I entered the arrangement with was no longer employed there. My card number was on file and the representative made the charge to my account at that time, clearing the outstanding $201 balance. I apologized for any miscommunication. The account has been paid in full.

*Formal Hearing*

This matter proceeded to a formal hearing on the merits. The ODC introduced the transcripts of the depositions of two witnesses associated with the clinic, but did not call any witnesses to testify before the hearing committee. Respondent testified on her own behalf and on cross-examination by the ODC.

Respondent testified that she is currently employed as an attorney with the DCFS and has been since 2010. Her position at DCFS is manager of the appeals unit, which handles all of the department's appeals dealing with economic stability

3

issues (food stamps, kinship care payments, 5-TAP payments, etc.). The DCFS permits her to have a private practice, and she operated a very limited private practice to handle legal matters for family and friends. Her position with the DCFS also requires her to be an attorney in good standing.

Regarding the payment to the clinic, respondent testified that she transferred the $4,000 from her trust account to her operating account because she had no checks for her trust account. She never purchased checks for the trust account because she did not have enough clients to justify the cost of the checks. She issued a $4,000 check from her operating account to the clinic soon after receiving the settlement funds, but the clinic never received the check. She did not send the clinic another $4,000 check until August 2014. Respondent also admitted that the $4,000 owed to the clinic was withdrawn from her operating account at some point before she issued the August 2014 check. In approximately March 2014, she withdrew the funds as cash so she could get a cashier's check for the clinic but then inadvertently used the cash to pay her own personal expenses.

Respondent further testified that she learned she was pregnant in February 2014. She had previously suffered multiple miscarriages, and the pregnancy was high-risk due to her age and other health complications. Respondent's activity was limited and her physician recommended bed rest, but she had to return to work at the DCFS because she is the sole bread winner for her family. Her pregnancy was so overwhelming that she let other matters drop. Respondent expressed remorse for her misconduct and stated that, under normal circumstances, she would not have failed to promptly pay the clinic, but her priority at the time was keeping her baby alive.

*Hearing Committee Report*

4

After considering the testimony and evidence presented at the hearing, the hearing committee made factual findings consistent with the underlying facts set forth above. Additionally, the committee found that respondent maintained a client trust account but testified that she did not have any checks for the account because they would have cost $200. The committee further noted that respondent testified she had a "counter check" drawn on her operating account on February 11, 2014, in the amount of $4,000 and made payable to the clinic, which she then mailed to the clinic. However, she did not have a copy of the counter check or any other evidence that the check was drawn or mailed. Finally, respondent testified that the $901 charge to her debit card was above her daily limit and she notified the clinic that the payment needed to be split into two payments charged on different days. Based on these findings, the committee determined respondent violated Rule 1.15 of the Rules of Professional Conduct as alleged in the formal charges. The committee also concluded that respondent's failure to comply with Rule 1.15 constitutes conversion.

The committee determined that respondent knowingly and intentionally violated duties owed to her client and the public. She caused no actual injury of any significance, but the clinic was inconvenienced. In aggravation, the committee found a prior disciplinary record (2004 diversion for failing to promptly pay a third party), a dishonest or selfish motive, a pattern of misconduct, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law (admitted 1999), and indifference to making restitution. In mitigation, the committee found personal or emotional problems (high-risk pregnancy with medical complications and associated emotional effects), a cooperative attitude toward the proceedings, and remorse.

In light of the above findings, the committee recommended that respondent be suspended from the practice of law for one year and one day, with nine months deferred, followed by a two-year period of probation subject to the conditions that

5

respondent attend Trust Accounting School and obtain checks for her client trust account.

The hearing committee chair dissented, disagreeing with some of the aggravating factors found by the committee as well as disagreeing with the recommended sanction. Essentially, the chair disagreed with all of the aggravating factors found by the majority except the prior disciplinary record; however, he determined that the remoteness of the prior offense was a mitigating factor. Additionally, the chair stated:

> The Respondent has a responsible job with the State that requires a law license and that would be in jeopardy if a suspension was ordered… Her job does not require that she manage or have access to a trust account. She is the primary support for her family. There is absolutely no evidence that the Respondent has not fulfilled all of the duties of her State job in a proper manner. While she does have a limited private practice, it is my opinion that a sanction can be crafted that would enable her to continue her State employment, while adequately punishing her for the violation that has been proven by the requisite burden of proof.

Based on this reasoning, the chair recommended respondent be suspended from the practice of law for one year, fully deferred, subject to a one-year period of supervised probation, during which time she shall not engage in the private practice of law outside of her employment with the DCFS, attend Trust Accounting School, have her trust account periodically audited, and obtain checks for her trust account.

Respondent objected to the hearing committee's report. While respondent agreed with the committee's overall factual findings, she disagreed with the following aggravating factors: a dishonest or selfish motive, a pattern of conduct, refusal to acknowledge the wrongful nature of the conduct, and indifference to making restitution. She also argued that the recommended sanction is overly harsh and the more appropriate sanction is the one recommended by the chair in his dissent.

*Disciplinary Board Recommendation*

After reviewing this matter, the disciplinary board determined that the hearing committee's factual findings do not appear to be manifestly erroneous, are supported by the record, and have been generally admitted by respondent. Based on those facts, the board determined that respondent violated Rule 1.15 of the Rules of Professional Conduct.

The board then determined that respondent knowingly and intentionally violated duties owed to her client and the third-party medical provider. While respondent's misconduct did not cause actual harm, it created the potential for harm to her client and the third party. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined that the baseline sanction is suspension.

In aggravation, the board found the following: a prior disciplinary record, a dishonest or selfish motive, a pattern of misconduct, and substantial experience in the practice of law. In mitigation, the board found the following: personal or emotional problems, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, remorse, and remoteness of prior offense.

After considering this court's prior jurisprudence addressing similar misconduct, the board emphasized respondent's prior disciplinary history involving similar misconduct and the knowing and intentional nature of the misconduct at issue in concluding that a period of actual suspension is appropriate. Accordingly, the board recommended respondent be suspended from the practice of law for one year and one day, with nine months deferred, followed by a two-year period of probation with the condition that respondent complete Trust Accounting School and obtain checks for her trust account.

7

One board member dissented, stating that he would adopt the recommendation of the hearing committee chair as to the sanction to be imposed.

Respondent filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

There is clear and convincing evidence in the record that respondent failed to promptly remit $4,901 to a third-party medical provider. Based on these facts, respondent has violated Rule 1.15 of the Rules of Professional Conduct.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and

8

mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent negligently violated duties owed to her client and the third-party medical provider. Her misconduct did not cause actual harm, but it created the potential for harm to her client and the third party. Considering the ABA's *Standards for Imposing Lawyer Sanctions*, the applicable baseline sanction is suspension.

In aggravation, the record supports the following factors: a prior disciplinary record and substantial experience in the practice of law. In mitigation, the record supports the following factors: personal or emotional problems, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, delay in disciplinary proceedings, remorse, and remoteness of prior offense.

In recommending an actual period of suspension, both the hearing committee and the disciplinary board emphasized the knowing and intentional nature of respondent's misconduct and the fact that she had been offered diversion in 2004 for similar misconduct. However, based on our review of the record, we find this sanction is unduly harsh.

At the time she settled her father's personal injury case, respondent was experiencing significant personal and emotional problems attributable to a high-risk pregnancy. These issues appear to have contributed significantly to her negligence in failing to timely pay the medical provider. We see no evidence in the record that respondent's misconduct was the result of a dishonest or selfish motive or a failure to learn from past mistakes. Indeed, had it not been for the complications of her pregnancy, we believe respondent would not have failed to timely remit the clinic's funds.

In light of the substantial mitigating factors present, the negligent nature of respondent's conduct, the lack of any actual harm, and the fact that respondent made all but $201 in restitution before she had knowledge of the disciplinary complaint against her, we will reject the board's recommendation. We will suspend respondent from the practice of law for one year and one day, fully deferred, subject to a two-year period of supervised probation with the following conditions:

(1) Respondent shall not engage in the private practice of law outside of her employment with the DCFS for a period of one year.

(2) Within the first year of the probationary period, respondent shall attend Trust Accounting School.

(3) During the second year of the probationary period, respondent shall have her trust account audited quarterly and report the results of the audit to the ODC; and

(4) Respondent shall obtain checks for her trust account prior to commencing the private practice of law.

## DECREE

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Doris McWhite Weston, Louisiana Bar Roll number 26419, be and she hereby is suspended from the practice of law for a period of one year and one day. This suspension shall be deferred in its entirety, subject to a two-year period of supervised probation governed by the conditions set forth in this opinion. The probationary period shall commence from the date respondent, the probation monitor, and the ODC sign a formal probation plan. Any failure of respondent to comply with these conditions, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing

10

additional discipline, as appropriate.  All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

11